IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FIREMEN'S INSURANCE COMPANY OF WASHINGTON, D.C., <br><br> Plaintiff, <br><br> v. <br><br> DABECCA NATURAL FOODS, INC., and HOWARD B. SAMUELS, its Trustee, <br><br> Defendants. | Case No. |

### COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Firemen's Insurance Company of Washington, D.C. ("Firemen's"), by its undersigned counsel, James A. Morsch and Michael A. Jacobson of Saul Ewing Arnstein & Lehr LLP, for its Complaint against Defendants, DaBecca Natural Foods, Inc. ("DaBecca"), and Howard B. Samuels, not individually, but as trustee of DaBecca (the "Trustee"), alleges as follows.

### NATURE OF THE ACTION

1. Firemen's seeks a declaratory judgment that it does not owe insurance coverage under a Commercial Lines Policy issued by Firemen's to DaBecca, Policy No. 3207778-21, effective October 28, 2019 to October 29, 2020 (the "Policy") for the lawsuit filed in the Circuit Court of Cook County, Illinois, County Department, Law Division, Case No. 2022 L 004391, captioned as *Luis Guzman, as Independent Administrator of the Estate of Ernesto Guzman-Lara v. DaBecca Natural Foods, Inc.* (the "Underlying Lawsuit"). Specifically, Firemen's seeks a declaration that it does not owe a defense of, or indemnity for any relief requested in, the Underlying Lawsuit to DaBecca.

### THE PARTIES

2. Plaintiff Firemen's is a Delaware corporation duly licensed in the State of Illinois

to issue policies of insurance. Firemen's principal place of business is in Virginia.

3. DaBecca is a Texas corporation with its principal place of business located at 700 E. 107th Street, Chicago, Illinois.

4. Upon information and belief, on May 4, 2022, DaBecca entered into a "Trust Agreement and Assignment for the Benefit of Creditors" in which it purported to assign its property, assets, rights, and interests, in trust to Howard B. Samuels, Rally Capital Advisors LLC, of 350 North LaSalle Drive, Suite 1100, Chicago, Illinois, not individually, but as trustee (the "Trustee").

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because Firemen's and Defendants are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Thus, there is complete diversity of citizenship.

6. The Court has personal jurisdiction over Defendants because DaBecca's principal place of business is in Chicago, Illinois, and it transacts business in the State of Illinois, and because the Trustee is an Illinois-appointed trustee.

7. Venue is proper for this lawsuit pursuant to 28 U.S.C. § 1391 the policy was issued to DaBecca in Illinois, and the Underlying Lawsuit is filed in Illinois and is based on events that occurred in this District.

## THE INSURANCE POLICY

8. Firemen's issued the Policy to DaBecca, effective policy period October 28, 2019 to October 29, 2020. The Policy is comprised of several coverage parts. As relevant to this lawsuit, it includes commercial general liability coverage (the "CGL Coverage Part") and commercial

umbrella liability coverage (the "Umbrella Coverage Part"). A true and correct copy of the Policy is attached as **Exhibit A**.

**CGL Coverage Part**

9. The CGL Coverage Part is the primary general liability insurance coverage part and has limits of liability of $1,000,000 per Occurrence and a general aggregate limit of liability of $2,000,000.

10. The insuring agreement of the CGL Coverage Part, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, provides, in pertinent part:

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .
>
> \* \* \*
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > (2) The "bodily injury" or "property damage" occurs during the policy period; …
>
> \* \* \*
>
> **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

Commercial General Liability Coverage Form (CG 00 01 04 13), Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability.

11. The CGL Coverage Part defines "bodily injury" as:

40687059.1

> bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury."

Commercial General Liability Coverage Form, Coverage A, Section V – Definitions, as amended by endorsement, BODILY INJURY REDEFINED (CL CG 24 01 09 16).

12. The CGL Coverage Part defines "Occurrence" as:

> an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Commercial General Liability Coverage Form, Coverage A, Section V – Definitions.

13. The CGL Coverage Part also includes certain exclusions, including those which provide that:

> This insurance does not apply to:
>
> **a.** **Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.
>
> \* \* \*
>
> **d**. **Workers Compensation And Similar Laws**
>
> Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.
>
> **e**. **Employer's Liability**
>
> "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>
> (a) Employment by the insured; or
>
> (b) Performing duties related to the conduct of the insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that

4

        "employee" as a consequence of Paragraph (1) above.

        This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

        This exclusion does not apply to liability assumed by the insured under an "insured contract".

CGL Coverage Part, Section I – Coverages, Paragraph 2, as amended by endorsement (CL CG 04 92).

14.    Additional exclusions were added to the CGL Coverage Part by endorsement, including:

        EMPLOYMENT-RELATED PRACTICES EXCLUSION

    A.    The following exclusion is added to Paragraph 2., Exclusions of Section I- Coverage A- Bodily Injury And Property Damage Liability:

        This insurance does not apply to:

        "Bodily injury" to:

    (1)    A person arising out of any:

    \*    \*    \*

        (c)    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

    (2)    The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment–related practices described in Paragraphs (a), (b) or (c) above is directed.

        This exclusion applies:

    (1)    Whether the injury-causing event described in Paragraphs (a), (b), or (c) above occurs before employment, during employment or after employment of that person;

    (2)    Whether the insured may be liable as an employer or in any other capacity; and

    (3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

15. The CGL Coverage Part includes other provisions, including additional terms, conditions and exclusions, including a Pollution Exclusion.

**Umbrella Coverage Part**

16. The Umbrella Coverage Part's insuring agreement provides in pertinent part:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damage for such "bodily injury" or "property damage" when the underlying coverage does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damage to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit " for which we have the duty to defend….

b. This insurance applies to "bodily injury" or "property damages' that is subject to an applicable "retained limit" . . .

c. This insurance applies to "bodily injury" and "property damage" only if:

 (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

 (2) The "bodily injury" or "property damage" occurs during the policy period . . .

  \*  \*  \*

f. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death

6

resulting at any time from the "bodily injury."

Commercial Umbrella Part, Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability.

17. "Retained limit" is defined in the Commercial Umbrella Part to mean "the available limits of 'underlying insurance' scheduled in the Declarations or the 'self-insurance retention,' whichever applies."

18. "Ultimate net loss" is defined in the Commercial Umbrella Part to mean "the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the 'underlying insurer's' consent."

19. The Umbrella Coverage Part defines "bodily injury" as:

> bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury."

Commercial Liability Umbrella Coverage Form, Coverage A, Section V - Definitions.

20. The Umbrella Coverage Part defines "Occurrence" as:

> an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Commercial Liability Umbrella Coverage Form, Coverage A, Section V – Definitions.

21. The Umbrella Coverage Part includes a schedule of "underlying insurance," which provides:

```
2. SCHEDULE OF UNDERLYING INSURANCE

   Employers' Liability
   Company:        Accident Fund Insurance Company
   Policy Number:  1400011016
   Policy Period:  10/29/2019 - 10/29/2020
   Limits of Insurance:
       Bodily injury by accident        $ 1,000,000       Each Accident
       Bodily injury by disease         $ 1,000,000       Each Employee
       Bodily injury by disease         $ 1,000,000       Policy Limit
```

40687059.1

**Commercial General Liability**
Company: Firemen's Insurance Co of Washington DC
Policy Number: 3207778
Policy Period: 10/29/2019 - 10/29/2020
Limits of Insurance:
    Each Occurrence    $ 1,000,000
    Personal and Advertising Injury Limit    $ 1,000,000
    General Aggregate    $ 2,000,000
    Products-Completed Operations Aggregate    $ 2,000,000

**Commercial Auto Liability**
Company: Firemen's Insurance Co of Washington DC
Policy Number: 3207778
Policy Period: 10/29/2019 - 10/29/2020
Limits of Insurance:
    Covered Auto Liability - Each Accident    $ 1,000,000
    Hired Auto    $ 1,000,000
    Non-Owned Auto    $ 1,000,000

**Employee Benefits Liability**
Company: Firemen's Insurance Co of Washington DC
Policy Number: 3207778
Policy Period: 10/29/2019 - 10/29/2020
Limits of Insurance:
    Each Employee:    $ 1,000,000
    Aggregate:    $ 2,000,000
Retroactive Date: 10/29/2012

22. The Umbrella Coverage Part also includes certain exclusions including those which provide that:

This insurance does not apply to:

    a.    **Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

        *    *    *

    d.    **Workers Compensation And Similar Laws**

    Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

    e.    **Employer's Liability**

    "Bodily injury" to:

      (1)    An "employee" of the insured arising out of and in the course of:

           (a)    Employment by the insured; or

           (b)    Performing duties related to the conduct of the insured's business; or

      (2)    The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

                 \*      \*      \*

This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of the underlying limits for "bodily injury." To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the employer's liability risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

Umbrella Coverage Part, Section II, Paragraph 2(a), (d), and (e).

      23.    There are additional exclusions added by endorsement to the Umbrella Coverage Part, including an exclusion for viruses:

      **EXCLUSION**

      **COMMUNICABLE DISEASE**

This endorsement modified insurance provided under the following:

      COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

The following exclusion is Added to Paragraph 2. Exclusions of Section 1- Coverage A- Bodily Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B- Personal and Advertising Injury Liability:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the transmission of a "communicable disease" by an insured.
>
> "Communicable disease" means an infectious disease, illness or sickness transmissible from person to person by direct contact or indirect contact with bacteria, viruses or any other particles whether airborne or on a surface. "Communicable disease" includes infectious disease, illness or sickness that is sexually transmitted or from food or water contamination.

24. The Umbrella Coverage Part includes other provisions, including additional terms, conditions and exclusions, including a Pollution Exclusion.

## THE UNDERLYING LAWSUIT

25. On May 16, 2022, Luis Guzman, as Independent Administrator of the Estate of Ernesto Guzman-Lara (the "Estate") filed a Complaint at Law (the "Complaint") in the Underlying Lawsuit, pending in the Circuit Court of Cook County, Illinois, County Department, Law Division, Case No. 2022 L 004391, captioned as *Luis Guzman, as Independent Administrator of the Estate of Ernesto Guzman-Lara v. DaBecca Natural Foods, Inc.* A true and correct copy of the Complaint is attached as **Exhibit B**.

26. The gravamen of the Underlying Lawsuit is that an employee of DaBecca, Rosa Lara, allegedly contracted the virus COVID-19 at the premises of, and during the course of her employment with DaBecca, and transmitted COVID-19 to her son, Ernesto Guzman-Lara (the "Decedent"), which allegedly caused his death.

27. Before commencing the Underlying Lawsuit, Ms. Lara filed a Workers Compensation Claim against DaBecca, based on her alleged exposure to COVID-19 in April 2020 at her work place, which claim is still pending as of the date of the commencement of the Underlying Lawsuit.

28. The Estate alleges that in or around April 2020, the Decedent's mother, Rosa Lara (also referred to as Rosa Vega in the Complaint), was employed by DaBecca at its Chicago, Illinois

facility, located at 700 E. 107th Street, Chicago, Illinois.

29. In March-April of 2020, the Estate alleges that Illinois Governor J.B. Pritzker issued a series of Executive Orders in response to the COVID-19 pandemic, which included recommendations and guidance for social distancing, specified hygiene practices, and use of face coverings.

30. The Estate alleges that on March 17, 2020, DaBecca, through its Chief Operating Officer, issued a memorandum to employees regarding COVID-19 protocols, wherein DaBecca acknowledged the risks of COVID-19, acknowledged CDC recommendations, and outlined sanitation and travel practices to be implemented by DaBecca. (Complaint at ¶¶ 18-19.)

31. The Estate alleges that DaBecca qualified as an "essential business" under COVID-19 Executive Order No. 8 and that, on the Estate's information and belief, DaBecca's employees, including Ms. Lara, were required to attend work in-person.

32. The Estate alleges that DaBecca acknowledged the risks of COVID-19 and the corresponding government recommendations, but that DaBecca did not institute social distancing measures at its facility where Ms. Lara worked, and it did not enforce any requirements for its employees to use any personal protective equipment while at work. (Complaint at ¶¶ 5-24.)

33. The foregoing allegations regarding DaBecca engaging in conduct with knowledge of the risk of transmission of COVID-19 are incorporated into all counts of the Complaint.

34. The Complaint identifies specific procedures that DaBecca allegedly failed to institute. (Complaint, *e.g.*, ¶ 53 at Count I, ¶ 43 at Count II, ¶ 53 at Count III, and ¶ 43 at Count IV.)

35. The Estate alleges that, on information and belief, in early April 2020, the first positive case of COVID-19 at DaBecca's facility was confirmed.

11

36. The Estate alleges that Ms. Lara continued to go to work for DaBecca at its facility, but that DaBecca did not change any of its policies, procedures, or practices as a result of the of the early April 2020 confirmed case.

37. On or around April 26, 2020, Ms. Lara allegedly began experiencing symptoms of COVID-19.

38. On April 30, 2020, Ms. Lara allegedly tested positive for COVID-19.

39. In April 2020, the Estate alleges the Decedent was living with his mother, Ms. Lara, his father, and his siblings.

40. The Estate does not allege that the Decedent traveled to, or was ever on the premises of, DaBecca's facility.

41. On April 30, 2020, the Decedent allegedly began experiencing COVID-19 symptoms, and tested positive on or about May 1, 2020. Plaintiff alleges "on information and belief" that the Decedent contracted COVID-19 from his mother, Ms. Lara, and then died as a result of complications from COVID-19. (Complaint at ¶¶ 30-40.)

42. The Estate claims that DaBecca's actions were "willful and wanton disregard for maintaining a safe facility when it knew or should have known the virus was easily transmittable, and the risk of harm to those infected, especially vulnerable populations, included the risk of death." (Complaint, Count II at ¶ 43(m), Count IV at ¶ 43(m).)

43. The Estate has alleged four causes of action against DaBecca pursuant to 740 ILCS 180/1, *et seq* (Wrongful Death Act, Counts I and III), and pursuant to 755 ILCS 5/27-6 (Illinois Survival Statute, Counts II and IV).

44. On August 19, 2022, counsel for the Trustee sent a letter to Firemen's entitled "Submission of Claim against your Insured Dabecca [sic] Natural Foods, Inc." The Trustee's

counsel provided Firemen's with a copy of the Complaint and stated that DaBecca "hereby tenders this claim and demands that you provide coverage and a defense of this claim" under the Policy. A true and correct copy of the Trustee's August 19, 2022 Tender Letter is attached as **Exhibit C**.

45. Upon information and belief, DaBecca's Employer's Liability insurer is providing a defense to DaBecca for the Underlying Lawsuit.

46. On September 22, 2022, Continental Western Group, on behalf of Firemen's, informed the Trustee by letter that Firemen's was denying coverage of the Underlying Lawsuit, and that Firemen's would be filing a complaint confirming that there is no coverage for the Underlying Lawsuit under the Policy. A true and correct copy of the September 22, 2022 response to the Trustee's Tender Letter is attached as **Exhibit D**.

## COUNT I
**(Declaratory Judgement)**

47. Firemen's realleges and incorporates by reference paragraphs 1-46 as though fully set forth herein.

48. Under both the CGL Coverage Part and Umbrella Coverage Part, Firemen's "has no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

49. The insurance under the Policy does not apply if the alleged "bodily injury" is not caused by an "occurrence." "Occurrence" under the Policy means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

50. The Complaint in the Underlying Lawsuit does not allege an "occurrence," as required to trigger coverage under both the CGL Coverage Part and the Umbrella Coverage Part.

51. The Complaint asserts that DaBecca was aware of government mandates and guidelines for protective procedures and did not implement them, with the foreseeable result of a

13

family member of an employee – the Decedent – contracting COVID-19 with resultant "bodily injury." (*See*, e.g. Complaint, ¶19; Count I at ¶¶ 51 and 53 (m); Count II at ¶¶ 1-40, 41, 43, 44; Count III at ¶¶ 1-53; Count IV at ¶¶ 1-40, 43.)

52. Even if the Complaint did allege an "occurrence," coverage under the CGL Coverage Part is excluded pursuant to the exclusions set forth in Section I, Coverage A, Paragraph 2 of the CGL Coverage Part, and exclusions added by endorsement, including, without limitation, the Expected or Intended Injury Exclusion, the Workers Compensation and Similar Laws Exclusion, the Employer's Liability Exclusion, the Pollution Exclusion, and the Employer-Related Practices Exclusion.

53. The Employer's Liability Exclusion in the CGL Coverage Part provides that there is no insurance under the Policy for "bodily injury" to an employee, or her "spouse, child, parent, brother or sister," when that injury arises "out and in the course" of that employee's employment by the insured. Here, the Estate alleges in the Underlying Lawsuit that the Decedent was injured and died as a result of exposure to his mother, a DaBecca employee, who contracted COVID-19 during the course of her employment with DaBecca, Firemen's insured.

54. The Insuring Agreement of the CGL Coverage Part provides that Firemen's has no duty to defend DaBecca against any suit seeking damages for "bodily injury" to which this insurance does not apply.

55. On information and belief, DaBecca's Employer's Liability insurer is providing a defense to DaBecca for the Underlying Lawsuit.

56. By reason of the foregoing, there is no coverage under the CGL Coverage Part for the Lawsuit, and Firemen's has no duty to defend or indemnify DaBecca.

57. Coverage under the Umbrella Coverage Part is also excluded pursuant to the

exclusions set forth in Section I, Coverage A, Paragraph 2 of the Umbrella Coverage Part, and corresponding exclusions added by endorsement, including, without limitation, the Employer's Liability Exclusion, the Communicable Disease Exclusion, the Expected or Intended Injury Exclusion, the Pollution Exclusion, and the Employer-Related Practices Exclusion.

58. The Communicable Disease Exclusion provides that there is no insurance under the Policy for "bodily injury" arising out of the "transmission of a 'communicable disease'" by an insured. Here, the Underlying Lawsuit is based on the premise that the Decedent's death, and all injuries alleged and damages sought, arose out of a transmission of COVID-19 at DaBecca's Chicago, Illinois facility.

59. By reason of the foregoing, there is no coverage under the Umbrella Coverage Part for the Lawsuit, and Firemen's has no duty to defend or indemnify DaBecca.

60. By reason of the foregoing, an actual and justiciable controversy exists between the parties which may be determined by a judgment or order of this Court. This Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the Policy, and to give such other and further relief as may be necessary to enforce the same.

61. Accordingly, Firemen's is entitled to a declaration that it owes no coverage obligation to DaBecca, including no obligation to defend or indemnify, under the Policy in connection with the Underlying Lawsuit.

WHEREFORE, Plaintiff, Firemen's Insurance Company of Washington, D.C., prays that this Court enter a judgment in its favor and against Defendants, finding and declaring Firemen's has no duty to defend or indemnify DaBecca in the Underlying Lawsuit under the Policy, and for any such other and further relief that this Court deems equitable and just.

Respectfully submitted,

Firemen's Insurance Company of Washington, D.C.

By:   */s/ Michael A. Jacobson*
       One of its Attorneys

James A. Morsch (ARDC #6209558)
(jim.morsch@saul.com)
Michael A. Jacobson (ARDC #6313122)
(michael.jacobson@saul.com)
SAUL EWING ARNSTEIN & LEHR LLP
161 North Clark Street, Suite 4200
Chicago, IL 60601
(312) 876-7100

16

40687059.1